PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONALD S. NICKELL, ) | |
| ) | CASE NO. 4:17CV969 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| OLD DOMINION FREIGHT LINE, INC., ) | **MEMORANDUM OF OPINION &** |
| ) | **ORDER** |
| Defendant. ) | [Resolving ECF No. 20] |

Pending before the Court is Defendant Old Dominion Freight Line, Inc.'s Motion for Summary Judgment. ECF No. 20. Plaintiff Ronald Nickell responded. ECF No. 22. Defendant replied. ECF No. 23. For the reasons that follow, the Court grants Defendant's motion.

**I. Background**

**A. General Background**

Plaintiff applied for employment with Defendant on June 10, 2009. ECF 17-1 at PageID #: 151.[1] His application included a statement acknowledging that, if he were employed by Defendant, his employment would be at will. *Id.* at PageID #: 418. Defendant hired Plaintiff as

---

[1] The Court admonishes the parties for failing to follow the Order requiring the submission of stipulations of uncontested facts. *See* ECF No. 10 at PageID #: 81. Defendant cites Plaintiff's failure to respond to either its letter requesting dismissal or Defendant's proposed list of uncontested facts. ECF No. 20 at PageID #: 736. The Order specifically requires the lead counsel for both parties to confer "in person." ECF No. 10 at PageID #: 81.

1

(4:17CV969)

a driver in March 2010.  *Id.* at PageID #: 157.  He obtained a position as a line-haul driver in August 2015.  *Id.*  As a line-haul driver, Plaintiff was responsible for driving trailers between Defendant's terminals in Girard, Ohio and Carlisle, Pennsylvania.  *Id.* at PageID#: 159.

### B. Employment with Defendant

As the start of his employment with Defendant in February 2010, Plaintiff received a copy of the Employee Handbook, which stated the following: "I understand this handbook does not constitute a contract of employment with Old Dominion either express or implied, but that my employment is an 'employment at will' which may be terminated at any time by Old Dominion."  ECF No. 17-1 PageID #: 151; ECF No. 20-2 at PageID #: 740.  In March 2015, Plaintiff received a revision to the Employee Handbook, which stated, "…[Old Dominion's] relationship with its employees is and always will be one of voluntary employment 'at will.'" ECF No. 17-1 at PageID #: 154, 423.  The revised Handbook also provided that:

> Neither this handbook nor any other company document confers any contractual right, either express or implied, to remain in the company's employ or places any limitations on its right to terminate the employment relationship.  Employment for a specific term cannot be guaranteed or promised except pursuant to an employment contract separate from this handbook. Only the Chief Executive Officer (and no other company representative) has the authority to enter into any agreement for employment for any specific duration. Moreover, no such separate agreement is enforceable unless it is signed by the employee and by the Chief Executive Officer.

*Id.* at PageID #: 423.

### C. Termination Incident

On September 29, 2015, Plaintiff drove from Girard to Carlisle.  ECF No. 17-1 at PageID #: 167; ECF No. 1-1 at PageID #: 7, ¶¶ 7-8.  Plaintiff felt the need to urinate when he arrived, but "decided he could wait" until he had finished picking up the return trailers.  *Id.* at ¶ 12.  After

2

(4:17CV969)

preparing the first of the trailers his need to urinate became overwhelming, and he believed he could not wait to use a restroom. *Id.* at ¶ 13. Plaintiff stepped behind his truck and urinated in the terminal yard. *Id.* at ¶ 14.

On September 30, 2015, the Girard terminal supervisor called Plaintiff into his office about a complaint that Plaintiff had urinated in the yard. ECF No. 17-1 at PageID #: 176. Upon questioning, Plaintiff admitted he had urinated and was terminated. *Id.*

### D. Post-Termination

Plaintiff made several calls to Defendant's management, including Human Resources Director DeeDee Cox, Vice President of Operations David Bates, and Chief Executive Officer David Congden. ECF No. 17-1 at PageID #: 178-80. All three told Plaintiff that the decision to terminate him was final. *Id.* at 179-80. Plaintiff states he had the impression that if he performed his duties professionally and did not receive customer complaints, his employment would continue. *Id.* at PageID #: 150. He was unable, however, to identify any specific promise made to him by an employee of Defendant that informed this belief. *Id.* at PageID #: 156.

Defendant has a policy of terminating drivers "when there is sufficient evidence and/or the driver admits he or she urinated in public…." ECF No. 20-1 at PageID #: 738-739. Defendant has terminated at least eleven drivers for such behavior between April 2014 and November 2017. *Id.* at PageID #: 739.

In February 2017, Plaintiff was diagnosed with an enlarged prostate (Benign Prostatic Hyperplasia) and an "agitated bladder." ECF 17-1 at PageID #: 525.

(4:17CV969)

Plaintiff filed suit in the Trumbull County Court of Common Pleas. ECF No. 1-1. Defendant removed the action. ECF No. 1. Plaintiff's complaint contains two claims, each under Ohio law: (1) wrongful termination in violation of public policy; and (2) breach of implied contract.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to [whether] the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."

4

(4:17CV969)

*Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Discussion

**A. Wrongful Termination in Violation of Public Policy**

Ohio "has long recognized the right of employers to discharge employees at will." *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 103 (Ohio 1985). But, employers may not

5

(4:17CV969)

terminate employees when a termination conflicts with clear public policy. *Painter v. Graley*, 70 Ohio St. 3d 377, 383 (Ohio 1994). To establish an action for wrongful discharge, a plaintiff must show the following:

> '1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
> '2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
> '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
> '4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).'

*Collins v. Rizkana*, 73 Ohio St. 3d 65, 69–70 (Ohio 1995) (citation omitted). The first two elements, clarity and jeopardy, are matters of law, and the latter two are questions of fact. *Id.*

### 1. Clarity

A plaintiff alleging wrongful termination in violation of public policy must first establish that "a clear public policy is manifested in the state or federal constitutions, or in a statute, an administrative regulation, or the common law." *Leininger v. Pioneer Natl. Latex*, 115 Ohio St. 3d 311, 314 (Ohio 2007). A plaintiff must support the alleged policy with specific citations, and a court may not attempt to find support for the policy of its own volition. *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 173-174 (Ohio 2011).

In his complaint, Plaintiff alleged that Defendant "discriminat[ed] against workers who need reasonable accommodations due to [their] physical infirmaries such as [Benign Prostatic Hyperplasia]." ECF No. 1-1 at PageID #: 8-9, ¶ 25. Plaintiff fails to specify a source of law in support of that argument, and later concedes in his opposition to Defendant's motion that his

6

(4:17CV969)

medical problems do not qualify as a disability.[2] ECF No. 22 at PageID #: 760. Plaintiff alters his argument in his brief, asserting instead that public policy prohibits the discharge of an employee for voiding his bladder in an emergency, if the act is done without indecently exposing any part of his body. *Id.* at PageID #: 769. In support of his argument, Plaintiff cites *Cleveland v. Pugh*, 110 Ohio App. 3d 472 (Ohio Ct. App. 1996), a decision from Ohio's Eighth District Court of Appeals that overturned a public indecency conviction based on the defendant's urgent need to urinate.

*Pugh* does not establish clear public policy in Ohio. The Eighth District's ruling went only so far as to state that the defendant's conduct did not meet the specifications of the public indecency charge. *See id.* at 474 (finding that public indecency under Cleveland Codified Ordinances 619.07 (Ohio Rev. Code § 2907.09) requires sexual context). The *Pugh* court did not find that the defendant's conduct was beyond reproach. Rather, it noted that even an urgent need to relieve oneself may still constitute disorderly conduct. *Id.* at 475.

Indeed, other Ohio appellate courts have reached holdings contrary to *Pugh*. The Tenth District expressly disagreed with the *Pugh* court in its decision to overturn the dismissal of a similar public indecency case. *Columbus v. Breer*, 152 Ohio App. 3d 701, 704 (Ohio Ct. App. 2003). And, the Ninth District expressed suspicion of the sexual context read into the statute in

---

[2] Plaintiff's failure to support his assertion of a public policy against termination due to disability preempts an argument that he merits protection under Ohio Rev. Code § 4112.02. Even so, he admits that his condition was undiagnosed and unknown to his employer at the time. Even after his diagnosis, Plaintiff does not claim that his impairment qualifies as a disability. The Court does not see fit to attempt to expand the protections Ohio Rev. Code § 4112.02 prescribes.

7

(4:17CV969)

*Pugh*. See *State v. McCall*, No. 09CA009729, slip op. ¶ 22 (Ohio Ct. App. Sept. 13, 2010).

Overall, the Court finds that the ruling in *Pugh* does not evince a policy preventing the termination of an employee for outdoor urination.

### 2. Jeopardy

Even assuming Ohio recognized leniency towards urgent urination as a matter of public policy, Plaintiff must establish that allowing the termination of employees in his situation would jeopardize that policy. See *Collins v. Rizkana*, 73 Ohio St. 3d 65, 70 (Ohio 1995). Plaintiff's reliance on *Pugh* is misplaced, as the facts are not analogous. The defendant in *Pugh* was unable to hold his urine during a drive, which forced him to pull to the side of the road. *Pugh*, 110 Ohio App. 3d at 473-74. In contrast, Plaintiff states in his complaint that he felt the urge to urinate when he pulled into the Harrisburg terminal. ECF No. 1-1 at PageID #: 7, ¶ 11. Plaintiff decided that he could wait until he had completed his work. *Id.* at ¶ 12. (Plaintiff testified in his deposition he felt the need to urinate each time he exited his truck. ECF No. 17-1 at PageID #: 175.) He misjudged, however, and his need to urinate became so urgent he felt he could not make it to a restroom and urinated in the yard.

Based on Plaintiff's own description, his public urination was caused by his mistaken judgment as to the urgency of his need to urinate, not a sudden urgent need. Therefore, his conduct is not protected by the policy he champions.

### 3. Causation or Overriding Justification

Plaintiff has failed to satisfy either of the final two elements: causation or overriding justification. Defendant states that Plaintiff's termination was motivated by his unprofessional

8

(4:17CV969)

behavior and public exposure. ECF No. 17-1 at PageID #: 512. Plaintiff has offered no theory to counter Defendant's reasons for termination. Plaintiff admits in his deposition that his conduct was unprofessional and reflected poorly on his employer. *Id.* at PageID #: 152. His termination is well within the guidelines outlined in the employee handbook, warning that termination was a possible consequence of "conduct unbecoming to that of the employee which may be detrimental to the company." *Id.* at PageID #: 310. Plaintiff's argument that employees may not be terminated for acts which are non-criminal does not persuade. Any number of actions may give cause for termination without rising to the level of criminal conduct (*e.g.*, excessive absence or insubordination).

Having failed to meet any of the four elements, Plaintiff's public policy claim fails.

**B. Implied Contract Claim**

Ohio also limits the rights of an employer to terminate its relationship with an employee when the facts and circumstances surrounding the employment create an implied contract. *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 104 (Ohio 1985). Even construing it most strongly in the employee's favor, an "array of evidence" is required to demonstrate the following:

> (1) oral and written assurances that his work performance is 'linked to job security';
> (2) his subjective belief of an expectation of 'continued employment'; and
> (3) an indication his employer also had a 'belief' as manifested by its 'policies, past practices and representations' that the employee possessed an expectation of continued employment with the company.

*Walton v. Greater Cleveland Reg'l Transit Auth.*, No. 76274, 2000 WL 868487, at *9 (Ohio Ct. App. June 29, 2000) (citing *Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St. 3d 571, 575, 577 (Ohio 1995)).

9

(4:17CV969)

In his deposition, Plaintiff was asked if anyone employed by Defendant had made a statement that led him to believe his performance guaranteed employment. He responded as follows: "Document-wise, no. And even verbally-wise, I would have to say no." ECF No. 17-1 at PageID #: 156. He based his belief in continued employment on praise from his supervisors and his reading of the Employee Handbook, which, he contends, outlines a progressive discipline policy.

### 1. Praise from Supervisors

In his deposition, Plaintiff stated that his impression arose from statements supervisors at annual meetings, thanking drivers for doing a good job and praising the Youngstown terminal's economic performance. *Id.* The Ohio Supreme Court has ruled that praise of performance by itself does not alter the employment-at-will relationship. *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St. 3d 131, 135 36 (Ohio 1989); *see also Wright*, 73 Ohio St. 3d at 577 (Pfeifer, J., concurring in judgment and in the syllabus) ("A corporate desire to make employees feel appreciated does not transform those employees into something other than at-will employees.").

### 2. Progressive Discipline Policy

In his Complaint and brief in opposition, Plaintiff argues that Chapter 14 of the Employee Handbook establishes a progressive discipline policy that limits Defendant's ability to terminate him, and, thereby, creates an implied contract. ECF No. 1-1 at PageID #: 9, ¶¶ 29-31; ECF No. 22 at PageID #: 765-766. He argues that Defendant's failure to reprimand him for his behavior prior to his termination violates the progressive discipline policy and, as a result, the implied

10

(4:17CV969)

contract. The text of the handbook does not support this theory. The handbook states that employees who behave unprofessionally "will be counseled, warned or discharged depending on the circumstances and the judgment of the Service Center manager or supervisor responsible for making the decision." ECF No. 17-1 at PageID #: 309. The plain language of the discipline policy does not place any limits on Defendant's rights to terminate an employee, but states that any offense may lead to discharge at the discretion of the supervisor.

Even if the Court were to accept Plaintiff's interpretation of the Handbook, the Ohio Supreme Court has ruled that "[a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook." *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St. 3d 108, 110 (Ohio 1991). Plaintiff signed an acknowledgment of such a disclaimer, when initially hired and in February 2010 and again when presented with the revised handbook in March 2015. ECF No. 17-1 at PageID #: 423; ECF No. 20-2 at PageID #: 740. In the revised handbook, just below the list of offenses that may lead to termination, another notice appears: "Your employment with Old Dominion is 'at will.' Please refer to the acknowledgment on the first page of this Driver's Handbook provisions regarding 'at will employment.'" ECF No. 17-1 at PageID #: 504. Plaintiff's initial application for employment with Defendant also contained explicit language stating that, if hired, his employment would be at will. *Id.* at PageID #: 418.

In light of these disclaimers, and because Plaintiff admits that he received no specific assurances either in person or in writing either promising his continued employment or limiting on Defendant's authority to terminate his contract, Plaintiff's implied contract claim fails.

11

(4:17CV969)

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

| | |
|---|---|
|   July 25, 2018   |   */s/ Benita Y. Pearson*   |
| Date | Benita Y. Pearson |
| | United States District Judge |